UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDWARD KAPLAN,

    Petitioner,

v.

DAVID E. ORTIZ,

    Respondent.

Civ. No. 17-1296 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Petitioner Edward Kaplan ("Petitioner") is a federal prisoner currently incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Specifically, Petitioner alleges that a Bureau of Prisons ("BOP") counselor acted outside his scope of authority when he set a payment schedule amending Petitioner's quarterly payment schedule under the Inmate Financial Responsibility Program ("IFRP") and then improperly placed Petitioner in refusal status when Petitioner rejected the amended payment schedule. The petition is ripe for disposition, and for the reasons outlined below, the petition will be denied.

## II. BACKGROUND

On October 8, 2010, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to 120 months of incarceration for the following offenses: one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; three counts of distribution and possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 18 U.S.C. § 2; and one count of distribution

and possession with intent to distribute cocaine near a school, in violation of 21 U.S.C. § 860. (ECF No. 3, Ex. 5 at pp. 1-2).

As part of his sentence, the District Court ordered Petitioner to pay an assessment of $400.00 and a fine of $25,000.00. (*Id.* at p. 6). Regarding the payment of the special assessment and fine, the District Court noted:

> The fine is due immediately. It is recommended that the defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program and provide a minimum payment of $25.00 per quarter towards the fine. In the event the fine is not paid prior to the commencement of supervision, the defendant shall satisfy the amount due in monthly installments of not less than $100.00, to commence 30 days after release from confinement.

(*Id.* at p. 7). The District Court did not order Petitioner to pay any restitution. (*Id.* at p. 6).

On October 23, 2013, while confined at FCI Schuylkill, Petitioner entered into an IFRP plan wherein he agreed to pay $25.00 per quarter to satisfy his financial obligation. (ECF No. 3, Ex. 7). The plan provided that Petitioner was to begin making payments in December 2013. (*Id.*). On August 11, 2015, Petitioner was transferred to FCI Fort Dix. (ECF No. 3, Ex. 6). Petitioner continued on the same financial plan whereby he continued to make a minimum $25.00 payment per quarter. (ECF No. 3, Ex. 9; ECF No. 4, Exs. 5-8).

On November 25, 2015, Petitioner was offered a revised IFRP plan for payments of $125 per month toward his monetary penalties. (ECF No. 3, Ex. 8). Respondents contend that the payment amount was arrived at by considering Petitioner's financial capacity, specifically his six-month deposit balance and account balance. (ECF No. 3 at pp. 4-5). Petitioner voiced his disagreement with the revised payment amount and refused to sign the plan. (ECF No. 3, Ex. 8). As a result, Petitioner was placed in "FRP Refuse" status. (ECF No. 3, Ex. 9).

Petitioner pursued an administrative appeal of his sanction. Petitioner filed a BP-8 informal resolution form with his counselor requesting to be removed from "FRP Refuse" status. (ECF No. 1, Ex. 1). On October 4, 2016, Petitioner filed a BP-9 with the Warden requesting to be taken off "FRP Refuse" status and asserting that his counselor did not have authority to increase his IFRP payments or renegotiate an existing IFRP plan. (ECF No. 1, Ex. 2). On October 20, 2016, the Warden denied Petitioner's request. (ECF No. 1, Ex. 3). On November 6, 2016, Petitioner appealed to the Regional Director by submitting a BP-10 form. (ECF No. 1, Ex. 4). The Regional Director denied Petitioner's appeal on December 6, 2016. (ECF No. 1, Ex. 5). On December 29, 2016, Petitioner appealed to the Central Office, however his appeal was rejected as incomplete on January 9, 2017. (ECF No. 1, Exs. 5-6). Petitioner re-filed his corrected BP-11 with the Central Office on February 15, 2017. (ECF No. 3 at p. 5). On April 13, 2017, the Central Office denied Petitioner's appeal. (ECF No. 6, Ex. 1).

Petitioner filed his habeas petition on February 23, 2017, arguing that the sentencing court failed to establish a payment schedule for Petitioner's fine and authority to establish a payment schedule may not be delegated to the BOP. (ECF No. 1 at pp. 6-7, 11-12). Additionally, Petitioner argues that his counselor at FCI Fort Dix acted outside the scope of his authority by altering Petitioner's financial plan and placing Petitioner in refusal status for failing to sign the new plan. (*Id.* at p. 7). In response, Respondent contends that Petitioner failed to properly exhaust his administrative remedies because Petitioner filed his habeas petition prior to receiving a final response from his appeal to the Central Office. (ECF No. 3 at pp. 5-6). Additionally, Respondent argues that Petitioner's claims fail on the merits as the BOP properly determined a payment schedule for Petitioner's monetary penalty. (*Id.* at pp. 7-11). In response, Petitioner filed a "motion to amend" his petition, which the Court construes as a traverse. (ECF No. 4).

3

## III. DISCUSSION

Federal habeas corpus review under § 2241 allows a federal prisoner to challenge the "execution of his sentence." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005). A habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison. *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973), *Telford v. Hepting*, 980 F.2d 745, 748 (3d Cir. 1993). Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Learner v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002).

The Third Circuit has recognized that an IFRP related claim sounds in habeas corpus. *See McGee v. Martinez*, 627 F.3d 933, 937 (3d Cir. 2010) (finding that the IFRP payment schedule and sanctions imposed for noncompliance are part of the execution of an inmate's sentence and such claims are properly brought under § 2241); *Pinet v. Grondolsky*, 345 F. App'x 805, 806 (3d Cir. 2009) (noting that where an inmate who "challenges the execution of his sentence by claiming that the BOP acted unlawfully in establishing a payment schedule regarding the imposed fine, the claim falls squarely within the purview of a section 2241 petition.").

1. **Motion to Amend the Petition**

In a document titled "motion to amend previously filed petition," Petitioner seeks to amend his habeas petition to add the following facts: 1) the total amount of payments made by Petitioner to date; 2) the fact that no unit team was present during his counselor's determination to increase his payments; and 3) the fact that no document was ever signed by Petitioner agreeing to any increase in payments. (*See* ECF No. 4 at p. 3). Because these facts do not assert any additional claims against Respondent, the Court will construe Petitioner's "motion to amend" as a traverse.

4

## 2. Exhaustion of Administrative Remedies

Although there is no statutory exhaustion requirement applicable to habeas petitions brought pursuant to 28 U.S.C. § 2241, the courts have created a rule that prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). The underlying rationale for the exhaustion requirement is that judicial review may be facilitated by the agency's development of a factual record, that judicial time may be conserved if the agency grants the relief sought, and that administrative autonomy requires that an agency be given an opportunity to correct its own errors. *See Arias v. United States Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981).

In order for a federal prisoner to exhaust administrative remedies, he must comply with the prison administrative remedy process set forth in the Code of Federal Regulations. Except for claims for which other administrative procedures have been established, federal inmates may seek "formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Generally, an inmate must first present an issue of concern informally to staff before submitting an Administrative Remedy Request. 28 C.F.R. § 542.13(a). If the attempt at informal resolution is not successful, an inmate must submit a written Administrative Remedy Request to the institution staff member designated to receive such requests within 20 days of the date on which the basis for the request occurred. 28 C.F.R. §§ 542.14(a) & (c)(4). The Warden has 20 days to respond to the Administrative Remedy Request, and an inmate who is not satisfied with the Warden's response may appeal to the Regional Director within 20 days of the Warden's response. 28 C.F.R. §§ 542.15(a) & 542.18. The Regional Director has 30 days to respond, and an inmate who is not satisfied with the Regional Director's response may appeal to the General Counsel

within 30 days of the Regional Director's response. 28 C.F.R. §§ 542.15(a) & 542.18. The General Counsel has 40 days to respond. 28 C.F.R. § 542.18. "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a).

In this case, Petitioner filed an Administrative Remedy Request, which was denied by the Warden. Petitioner then filed a Regional Administrative Remedy Appeal, which was denied by the Regional Director. Petitioner filed an appeal to the General Counsel, which the Central Office rejected for failure to submit a copy of the Administrative Remedy Request and Warden's response. Petitioner then resubmitted his appeal to the Central Office with a copy of the requested documentation.

Petitioner filed this habeas corpus case on February 23, 2017, before he had exhausted his administrative remedies. While this petition was pending, the General Counsel denied Petitioner's appeal. Although Petitioner should have waited until he either received a response from the General Counsel or the deadline for a response from the General Counsel passed before filing his habeas corpus petition, Petitioner has now finished the administrative remedy process. Thus, Petitioner's petition shall not be dismissed on the basis that Petitioner failed to exhaust administrative remedies. *See Motolo v. Baltazar*, No. 15-803, 2015 WL 5895511, at *3 (M.D. Pa. Oct. 6, 2015) (excusing exhaustion where petitioner had filed an appeal to, but had not heard a reply from, the Central Office).

### 3. Merits

Petitioner argues that his BOP counselor did not have authority to unilaterally change the terms of Petitioner's IFRP "contract" and increase the amount of his payments. (ECF No. 1 at p. 23). Additionally, Petitioner contends that his BOP counselor improperly placed him in refusal status for not agreeing to participate in the increased payment plan. (*Id.* at p. 25).

6

The Attorney General is responsible for the collection of criminal fines. 18 U.S.C. § 3612(c). The time and method of payment is governed by 18 U.S.C. § 3572(d)(1), which does not require a sentencing court to set a payment schedule nor does it preclude a sentencing court from deferring the issue of payment schedule to the BOP through its IFRP. *See Douglas v. Martinez*, 416 F. App'x 168, 170 (3d Cir. 2010). The BOP established the IFRP to encourage sentenced inmates to meet their legitimate financial obligations. 28 C.F.R. § 545.10.

Federal regulation 28 C.F.R. § 545.10 "explicitly permits the BOP to assist the inmate in developing a financial plan for meeting his or her legitimate financial obligations." *Id.* (internal quotation marks omitted). Under the IFRP, "unit staff" develop a financial plan for each inmate and monitor his or her progress in adhering to that plan. 28 C.F.R. § 545.11. In doing so, they conduct an independent assessment of inmates' abilities to pay by reviewing their financial obligations and "all available documentation." 28 C.F.R. § 545.11(a). The IFRP typically requires a minimum payment of $25.00 per quarter. 28 C.F.R. § 545.11(b)(1). The minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources. 28 C.F.R. § 545.11(b)(1).

In challenging the BOP's authority to set and increase the payments of his court-imposed fine, Petitioner relies on numerous cases and statutes conferring the sentencing court with the power to set restitution payment schedules. Petitioner argues that these cases and statutes conflict with BOP regulations permitting BOP staff to make payment schedules for all monetary penalties. The cases and statutes cited by Petitioner are inapplicable to this matter as Petitioner's claim does not arise from an order of restitution. Instead, Petitioner is challenging the BOP's authority to set payments of his court-ordered fine. The Third Circuit has held that "unlike with restitution, there is no provision mandating that the order for a fine or special assessment include a payment

schedule in consideration of the defendant's economic circumstances." *Costigan v. Yost*, 318 F. App'x 58, 60 (3d Cir. 2008).

Although the sentencing court was not required to set a payment schedule for Petitioner's fine, the court specifically ordered that payment of the fine was due immediately. *See Herrera v. Zickenfoose*, No. 13-0307, 2013 WL 5923139, at *3 (M.D. Pa. Oct. 31, 2013) ("unlike with restitution, there is no provision mandating that the order for a fine or special assessment include a payment schedule in consideration of the defendant's economic circumstances") (citing *Costigan*, 318 F. App'x at 60). Petitioner voluntarily agreed to participate in the IFRP and make quarterly payments in the amount of $25.00 until his obligations were satisfied. *See Jordan v. Holt*, 488 F. App'x 587, 588 (3d Cir. 2012) ("The BOP only implements the IFRP after a prisoner has chosen to participate in it."). "Prisoners are not entitled, constitutionally or otherwise, to any of the benefits agreeing to participate in the IFRP would provide," and the "consequences of choosing not to participate in the IFRP do not amount to constitutional violations." *Id.*

Once an inmate agrees to participate in the IFRP, the BOP is authorized to help him develop a financial plan and monitor his progress in meeting his financial obligations. *See* 28 C.F.R. § 545.11. In monitoring the inmate's progress, the BOP may recalculate or modify the inmate's financial plan. *See Duronio v. Werlinger*, 454 F. App'x 71, 73 (3d Cir. 2011) ("We are aware of no holding that would suggest that an inmate is prohibited from contributing additional monies to restitution he owes, especially when doing so—and being placed on IFRP status—confers benefits that would otherwise be lost."); *U.S. v. Lemoine*, 546 F.3d 1042, 1050 (9th Cir. 2008) (holding that "the BOP has authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP."); *Enigwe v. Sneizek*, No. 05-2734, 2007 WL 1235673,

at *3 (N.D. Ohio Apr. 26, 2007) (holding that the BOP's recalculation of inmate's IFRP payment plan with increase in payment amount and frequency was in full accordance with the IFRP); *Mujahid v. Crabtree*, 999 F. Supp. 1398, 1400 (D. Or. 1998), *affirmed by*, 172 F.3d 57 (9th Cir. 1999) ("The regulations fix the minimum 'payment' at $25.00 per quarter, but the BOP may unilaterally increase that amount.").

Moreover, to the extent Petitioner argues that the BOP is bound by the first IFRP "contract" which set his payments at $25.00 per quarter, such argument lacks merit. The "Inmate Financial Plan" document that Petitioner signed is not a "contract," as it evinces no promise made or obligation assumed by the BOP in exchange for Petitioner's participation in the IFRP. Rather, the document concerns only Petitioner's understanding of the IFRP's requirements and his promise to remit payments according to the specified schedule. *See, e.g.*, *Shelton v. United States*, 539 F. App'x 1011, 1013-14 (Fed. Cir. 2013) (unpublished) (holding that IFRP participation form was not a contract); *Ewing v. Carter*, No. 13-56, 2014 WL 1516332, at *3 (N.D. W. Va. Apr. 17, 2014) (rejecting inmate's argument that inmate financial plan document was a contract).

Accordingly, Petitioner's claim that the BOP does not have authority to set a schedule for the payment of his court-ordered fine fails. Petitioner voluntarily entered into the IFRP and the BOP's scheduling, modification, and collection of funds for payment of his fine is in accordance with the IFRP.

## V.  CONCLUSION

For the foregoing reasons, Petitioner's habeas petition filed pursuant to 28 U.S.C. § 2241 will be denied on the merits.  An accompanying order will be entered.


DATED:  March 26, 2018                                                   s/Robert B. Kugler
                                                                                            ROBERT B. KUGLER
                                                                                            United States District Judge